## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | |
|---|---|
| MAURICE STEWART #208-348 | : |
| | : |
| ' Plaintiff | : |
| | : |
| v. | :     **CASE NO. JFM 14-570** |
| | : |
| WEXFORD HEALTH SOURCES, INC. | : |
| ET AL. | : |
| | : |
| , Defendants | : |

## MEMORANDUM OF LAW

Defendants Wexford Health Sources, Inc. ("Wexford") and Robustiano Barrera, M.D. (collectively referred to as "Defendants"), by their undersigned counsel, Joseph B. Chazen, Gina M. Smith and Meyers, Rodbell & Rosenbaum, P.A., hereby submit the following Memorandum of Law in support of their Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

### I.   INTRODUCTION

On February 26, 2014, Plaintiff, then an inmate at Western Correctional Institution ("WCI"), filed a Complaint in the United States District Court for the District of Maryland. ECF No. 1. In his Complaint, Plaintiff alleges that he suffers from cancer and chronic back problems.[2] Id. Plaintiff alleges that due to his cancer he cannot function in his cell and therefore must be housed in the infirmary where he can receive round-the-clock treatment. Id. Plaintiff further alleges that Dr. Barrera told Plaintiff that he would refer Plaintiff to the infirmary, but never followed

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[2] Only those allegations that relate to Wexford and Dr. Barrera will be presented and discussed as these are the only allegations relevant to the present Motion.

- 1 -

{066945.DOC}

through on this. Id. Plaintiff also alleges that he has not received any treatment for his cancer, including: chemotherapy, radiation treatments, tumor imaging, PET scans, CT scans or MRIs. Id. Plaintiff finally alleges that this deficient treatment is a result of the Defendants working with correctional staff to have Plaintiff killed. Id. Plaintiff has requested $100,000.00 from each Defendant individually. Id. Plaintiff also seeks an injunction to be transferred to a different prison and for an Order requiring that Plaintiff receive proper medical care. Id.

On April 2, 2014, Plaintiff sent a correspondence to the Court. ECF No. 4. In the correspondence, Plaintiff alleges that he is constantly being harassed by correctional staff at the prison and that "**if [correctional officers] force [Plaintiff] into general population in this W.C.I. prison [Plaintiff is] going to get some H.I.V. or A.I.D.S. tainted fluids from an infected inmate in general population and [Plaintiff is] going to infect any correctional officer that [Plaintiff] come[s] into contact with on the prison compound.**" Id. (emphasis added).

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff, an inmate at North Branch Correctional Institution ("NBCI"), is a 47 year old male with a medical history significant for backache, asthma, hypertension, epilepsy, hyperlipidemia, chronic pain, hypertension, and dermatofibrosarcoma protuberans[3] ("sarcoma"). See Plaintiff's Relevant[4] Medical Records attached hereto as Exhibit 1 and incorporated by reference herein; Affidavit of Robustiano

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[3] Dermatofibrosarcoma protuberans (DFSP) is a relatively uncommon soft tissue neoplasm (tumor) with intermediate- to low-grade malignancy. Although metastasis rarely occurs, DFSP is a locally aggressive tumor with a high recurrence rate. See http://emedicine.medscape.com/article/1100203-overview.

[4] Only those medical records that refer or relate to Plaintiff's allegations are attached and discussed.

- 2 -

{066945.DOC}

Barrera, M.D. attached hereto as Exhibit 2 and incorporated by reference herein. Plaintiff also has a mental health history significant for Axis II[5] personality traits and manipulative behaviors. Id. Plaintiff also has a history of noncompliance with his medication regime, failure to attend scheduled provider and off-site visits, and has frequently displayed aggressive and hostile behaviors toward medical staff. Id.

On July 12, 2013, Plaintiff, then an inmate at WCI, was seen by Ali Yahya, M.D. due to Plaintiff's complaints of back pain. Exhibit 1 at pp. 1-2. Plaintiff described the pain as an ache and stated that it did not radiate. Id. Plaintiff stated that his back hurt when he bent forward and that the Mobic[6] he was prescribed was not effective for the pain and requested a muscle relaxer. Id. Accordingly, Dr. Yahya discontinued Plaintiff's Mobic and began Plaintiff on a Baclofen[7] regimen and Tylenol-codeine No. 3[8] ("Tylenol No. 3"). Id. Plaintiff was advised to follow up in seven days if there was no improvement. Id.

On July 31, 2013, Plaintiff was seen by Ava Joubert, M.D. for a provider sick call visit related to Plaintiff's medication renewal requests. Id. at pp. 3-4. Dr. Joubert noted that during the visit Plaintiff's attention was diverted when the correctional officer inquired about Plaintiff's self-professed need to be pushed in a wheelchair to ambulate. Id. Dr. Joubert noted that Plaintiff, in response to the

---

[5] Axis II disorders comprise various personality disorder such as borderline and antisocial. See http://medical-dictionary.thefreedictionary.com/Axis+II.

[6] Mobic, also known as meloxicam, is a nonsteroidal anti-inflammatory drug ("NSAID"). Mobic works by reducing hormones that cause inflammation and pain in the body. Mobic is used to treat pain or inflammation. See http://www.drugs.com/mobic.html.

[7] Baclofen is a prescription muscle relaxer. See http://www.drugs.com/baclofen.html.

[8] Tylenol with Codeine No. 3 is a pain medication that contains acetaminophen and codeine, an opioid, and is used to treat moderate to severe pain. See http://www.drugs.com/mtm/tylenol-with-codeine-3.html.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 3 -

{066945.DOC}

officer's query, insisted that Dr. Joubert inform the officer of Plaintiff's need to be pushed in a wheelchair. Id. When Dr. Joubert refused to corroborate Plaintiff's story, Plaintiff "became irate and left the exam room." Id.

On September 15, 2013, Plaintiff was seen by Mariama Coker, R.N. due to Plaintiff's involvement in an altercation. Id. at p. 5. Plaintiff was escorted to the medical room by a correctional officer. Id. Plaintiff alleged that he was struck by another inmate. Id. On examination, Plaintiff was alert and oriented. Id. Plaintiff's right eye was observed to have some redness. Id. No swelling or open skin was observed. Id. Plaintiff complained of a headache and back pain. Id. Plaintiff stated that it was his belief that his back was re-injured during the altercation. Id. It was noted that Plaintiff was on Tylenol No. 3 for back pain. Id.

On September 16, 2013, Plaintiff was seen by Grace Akinpetide, N.P. for an unscheduled provider visit. Id. at pp. 6-7. At 1700 hours, Plaintiff had a seizure in his cell that lasted for fifteen minutes. Id. Plaintiff's vitals were checked and was given 2mg of Ativan[9]. Id. Plaintiff continued to seize until 1740 hours at which point another dose of Ativan was given to Plaintiff. Id. It was decided that Plaintiff needed to be sent to the emergency department because Plaintiff continued to seize with intervention and 911 was called. Id.

Plaintiff was taken to Laurel Regional Hospital where he was under the care of Rhamin Ligon, M.D. Id. at pp. 209-236. Nursing staff noted that Plaintiff was

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[9] Ativan, generically called Lorazepam, is used to treat anxiety. Lorazepam belongs to a class of drugs known as benzodiazepines which act on the brain and nerves (central nervous system) to produce a calming effect. This drug works by enhancing the effects of a certain natural chemical in the body (GABA). See http://www.webmd.com/drugs/drug-6685-Ativan+Oral.aspx?drugid=6685&drugname=Ativan+Oral.

- 4 -

{066945.DOC}

ambulatory upon arrival with a steady gait.  Id.  Plaintiff was alert to person, place and time. Plaintiff's pulse and oxygen saturation on room temperature were both within normal limits.  Id.  A CT scan of Plaintiff's lumbar and thoracic spine were also shown to be within normal limits.  Id.  Plaintiff was discharged the next day.  Id.

On September 17, 2013, Plaintiff returned from Laurel Regional Hospital.  Id. at p. 8.  It was noted that in the emergency room Plaintiff was examined and CT scans of Plaintiff's cervical and thoracic spine were done along with a number of laboratory tests.  Id.  The CT scans returned negative for any acute pathology.  Id.  Plaintiff was provided Percocet[10] for the pain.  Id.  Plaintiff was discharged with a diagnosis of seizure disorder and with the recommendations to discontinue Plaintiff's Dilantin[11] and reduce Plaintiff's Zocor[12] dosage to 10mg.  Id.  It was also recommended that Plaintiff be seen by a neurologist as soon as possible.  Id.  Plaintiff expressed improvement with his back pain.  Id.  Plaintiff stated that a skin growth on his mid-to-upper back was a reoccurrence of a previous tumor.  Id.  Plaintiff was later returned to the WCI infirmary as per protocol.  Id.

On September 18, 2013, Plaintiff was seen by Defendant, Dr. Barrera, while on infirmary rounds.  Id. at pp. 12-13.  Dr. Barrera noted that Plaintiff was admitted to the infirmary the previous day after an alleged seizure.  Id.  It was also noted that, at the time of the seizure, Plaintiff's Dilantin levels were "severely low".  Id.  Plaintiff

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

[10] Percocet contains a combination of acetaminophen and oxycodone, an opioid, and is used to treat moderate to severe pain.  See http://www.drugs.com/percocet.html.

[11] Dilantin is an anti-epileptic drug.  See http://www.drugs.com/dilantin.html.
[12] Zocor is used to lower cholesterol.  See http://www.drugs.com/zocor.html.

- 5 -

{066945.DOC}

stated that was not taking his Dilantin due to an alleged allergy to the medication. Id. Plaintiff stated that a neurologist allegedly informed Plaintiff that he had suffered a grand mal seizure[13]. Id. Despite Plaintiff's alleged allergy to Dilantin, it was noted in Plaintiff's chart that Plaintiff had no known drug allergies. Id.

Later that day, Plaintiff was seen by Kimberly Martin, R.N. while on infirmary rounds. Id. at p. 15. Plaintiff stated that he had a tumor on his back, and that the tumor was likely the cause of his lower extremity weakness. Id. On assessment, no neurological deficits were found, but bilateral hand and leg weakness was observed. Id. Nurse Martin further noted "scarring/growth" on Plaintiff's upper back. Id. It was noted that Plaintiff was able to stand in order to get into his wheelchair and was able to complete all of his self-care and activities of daily living independently. Id.

On September 19, 2013, Plaintiff was seen by Karen Meyers, R.N. while on infirmary rounds. Id. at pp. 16-17. Plaintiff stated that he was in the infirmary because of back pain, which he rated at a fourteen out of ten at the time. Id. Nurse Meyers noted that Plaintiff was out of bed with no signs or symptoms of severe pain observed; i.e. no facial grimace, no restlessness or tenseness, no tearfulness. Id. Plaintiff later informed Nurse Meyers, "Oh that's right I also had a seizure." Id. Plaintiff was able to move all extremities with sensation intact. Id. Weakness was noted in Plaintiff's lower extremities. Id.

Later that day, Plaintiff was seen by Colin Ottey, M.D. while on infirmary

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[13] A grand mal seizure features a loss of consciousness and violent muscle contractions. See http://www.mayoclinic.org/diseases-conditions/grand-mal-seizure/basics/definition/con-20021356.

{066945.DOC}

rounds. Id. at pp. 19-20. It was noted that Plaintiff was in the infirmary due to a seizure, and that Plaintiff had not suffered any seizures since being in the infirmary. Id. It was further noted that Plaintiff reported back pain at the site of a previous tumor resection.[14] Id. On assessment, Plaintiff's spine showed signs of tenderness in the mid-to-upper back. Id. Dr. Ottey discharged Plaintiff from the infirmary to special housing. Id. In his discharge note, Dr. Ottey stated that Plaintiff had been noncompliant with his medications, which was the likely cause of the seizure. Id. Plaintiff reported being allergic to Dilantin, but was also not taking his Tegretol[15]. Id. Dr. Ottey discontinued Plaintiff's Dilantin and replaced it with Keppra[16] 500mg. Id.

On September 25, 2013, Plaintiff was seen by Dr. Joubert for a provider chronic care visit for Plaintiff's hypertension, seizure, asthma, and sarcoma. Id. at pp. 25-27. Regarding Plaintiff's sarcoma, Plaintiff inquired when he would receive a biopsy. Id. Dr. Joubert explained that since Plaintiff did not attend his last medical oncology appointment, it had to be rescheduled. Id. Dr. Joubert could not say when Plaintiff's medical oncology appointment would be rescheduled. Id. On assessment of Plaintiff's back and spine, Plaintiff's spine was positive for tenderness with a pencil erasure-shaped scar. Id. Dr. Joubert scheduled a neurological chronic care follow up for three months. Id.

On September 30, 2013, Plaintiff was seen by Delores Adams, R.N. for Plaintiff's complaints of chest discomfort. Id. at pp. 28-30. Plaintiff stated that he

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[14] Plaintiff received a tumor resection in 2005. See Exhibit 1 at p. 205.
[15] Tegretol, generically known as carbamazepine is an anticonvulsant. It works by decreasing nerve impulses that cause seizures and pain. See http://www.drugs.com/tegretol.html.
[16] Keppra, generically known as levetiracetam is an anti-epileptic drug, also called an anticonvulsant. See http://www.drugs.com/keppra.html.

{066945.DOC}

had cancer and that Dr. Joubert thought that it was spreading[17].  Id.  Plaintiff stated that the pain begins in his neck and travelled to his groin.  Id.  Plaintiff became agitated when he wasn't being evaluated beyond his complaints of chest pain, which was the impetus of the visit.  Id.  Plaintiff inquired as to when he would receive a biopsy, at which point he was reminded that this exact issue was discussed with Plaintiff five days prior by Dr. Joubert.  Id.

On October 2, 2013, Plaintiff was seen by Dr. Joubert to evaluate Plaintiff's spine and back.  Id. at p. 31.  On assessment, Dr. Joubert noted that Plaintiff's back remained unchanged, and that the size of Plaintiff's scar also appeared unchanged. Id.  Dr. Joubert further noted that Plaintiff reported a history of sarcoma, but that Plaintiff had not made himself available for re-biopsy.  Id.  Plaintiff was advised that if he refused a further off-site visit for his back, he would be refusing to have any future evaluation pursued by medical staff.   Id.

On October 5, 2013, Plaintiff refused to be seen by Katrina Opel, R.N. for a scheduled nurse sick call visit.  Id. at p. 32.

On October 6, 2013, Plaintiff stopped Lori Schafer, R.N. while on segregation rounds.  Id. at p. 33.  Plaintiff stated that a provider was going to speak to the medical director regarding increasing Plaintiff's pain medications.  Id.  Plaintiff asked Nurse Schafer to email the provider for a status update.  Id.  Nurse Shafer relayed the information verbally to the provider and instructed Plaintiff to follow-up with a sick call in one week if Plaintiff had not been given an update.  Id.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[17] There is no indication in Plaintiff's medical records that Dr. Joubert held this belief.  To the contrary, Dr. Joubert, in her note from five days prior, made no mention of Plaintiff having cancer, let alone that it was spreading.

- 8 -

{066945.DOC}

On October 14, 2013, Plaintiff stopped James Wilt, R.N. while on segregation rounds complaining of back pain allegedly related to a tumor that had regrown. Id. at p. 34. A sick call slip was placed. Id.

On October 14, 2013, Plaintiff was seen by Dr. Joubert for a provider sick call visit related to Plaintiff's medication concerns, dry skin, and biopsy update. Id. at pp. 25-38. It was noted that Plaintiff ambulated with a plastic chair as a walker, which was likely causing his back pain because it required a great deal of forward bending. Id. Dr. Joubert advised Plaintiff that she would email the scheduler to inquire when Plaintiff would receive a biopsy. Id. Dr. Joubert further determined that Plaintiff's current pain management regimen was adequate. Id.

On October 25, 2013, a consult for general surgery for Plaintiff was approved. Id. at p. 39.

On November 5, 2013, Plaintiff was seen by Quinta Lum, P.A. for a scheduled provider visit for Plaintiff's preoperative biopsy. Id. at pp. 42-44. Plaintiff voiced concerns related to being in a transport vehicle for too long because Plaintiff claimed that his pain medication was inadequate. Id. P.A. Lum placed a referral for Plaintiff's medication concerns to be discussed in collegial. Id.

On November 15, 2013, Plaintiff was seen by Dr. Joubert for a provider sick call visit due to Plaintiff's complaints of back pain and lower extremity weakness. Id. at pp. 45-46. On assessment, Plaintiff's spine was negative for tenderness. Id. Dr. Joubert attempted to reassure Plaintiff and advised that his biopsy consult had been approved. Id. However, Plaintiff became angry and had to be escorted from the

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

{066945.DOC}

examination room. Id. Dr. Joubert referred Plaintiff to a general surgery provider to remove Plaintiff's back lesion. Id.

On December 10, 2013, Plaintiff was seen by Peggy Mahler, R.N.P. for a scheduled provider sick call visit. Id. at pp. 47-51. Plaintiff reported upper back pain and requested that he be provided Tylenol No. 3. Id. It was noted that Plaintiff was seen by Dr. Stasko on December 2, 2013, who recommended a re-excisional skin biopsy of Plaintiff's back lesion. Id. Nurse Practitioner Mahler ordered a follow-up with Dr. Joubert for a surgical consult in one month and placed a request for a surgical consultation for a re-excisional biopsy for Plaintiff's sarcoma. Id. Nurse Practitioner Mahler also placed a non-formulary drug request for Tramadol[18] for Plaintiff. Id.

On December 18, 2013, Plaintiff was seen by Nurse Practitioner Mahler for a provider chronic care visit. Id. at pp. 52-57. It was noted that Plaintiff's re-excisional skin biopsy was approved on December 10, 2013 and that it was in the process of being scheduled. Id. Nurse Practitioner Mahler referred Plaintiff to a provider in six weeks for a follow-up surgical consultation for Plaintiff's re-excision. Id.

On December 20, 2013, Plaintiff was seen by Dr. Joubert for a provider sick call visit. Id. at pp. 58-59. Plaintiff complained of testicular and back pain, which he felt were both related to the possible spread of cancer in Plaintiff's back. Id. Dr. Joubert informed Plaintiff that she would check on his surgical referral. Id.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[18] Tramadol, also referred to as Ultram, is a narcotic-like pain reliever. See http://www.drugs.com/tramadol.html.

- 10 -

{066945.DOC}

On December 23, 2013, Plaintiff's consultation was approved for a local surgeon. Id. at p. 60. Plaintiff was informed of this on December 25, 2013. Id. cylinders

On January 4, 2014, Plaintiff was seen by Nurse Opel for an unscheduled nurse visit. Id. at p. 61. Custody informed Nurse Opel that Plaintiff was being returned to his cell, at which time Plaintiff became combative and refused to go into his cell. Id. Plaintiff was then taken to a different cell. Id. Custody further informed Nurse Opel that Plaintiff "was up all night screaming and yelling and acting hostile" and that Plaintiff did not sit down all night. Id. Plaintiff stopped Nurse Opel while on morning segregation rounds complaining of chest discomfort. Id. On assessment, Plaintiff was not observed to be in any distress and was standing without difficulty. Id. Plaintiff requested to be removed from his cell so he could have his vital signs checked. Id. Custody advised that it would be dangerous to remove Plaintiff from his cell, and that Plaintiff should only be removed for an emergency. Id. When Nurse Opel advised Plaintiff that she would not let Plaintiff out of his cell, Plaintiff began screaming, "Fuck you you bitch! I am going to write you up you fucking bitch! Just wait." Id.

On January 5, 2014, Plaintiff was moved back to his normal cell. Id. at p. 62. Plaintiff had no visible injuries and voiced no complaints of injury. Id.

On January 8, 2014, Plaintiff refused to be seen for his scheduled preoperative visit. Id. at pp. 63-64. A release of responsibility was signed and witnessed. Id.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 11 -

On January 10, 2014, Plaintiff was seen by Dr. Joubert for a preoperative history and physical. Id. at pp. 65-67. No contraindications for the procedure were found. Id.

On January 16, 2014, the re-excision of Plaintiff's sarcoma was performed by Dr. Stasko. See Id. at p. 205. That same day, Plaintiff returned to the WCI infirmary after his re-excisional procedure. Id. at p. 68. Dr. Barrera renewed Plaintiff's expiring medications. Id. Plaintiff was then seen by Jamie Ravenscroft, R.N. in the infirmary. Id. at pp. 69-70. Plaintiff stated that he was not in pain at the time. Id. Plaintiff showed no signs or symptoms of distress and voiced no complaints. Id. Plaintiff was later seen by Patricia Knotts, R.N. in the infirmary. Id. at p. 72. Plaintiff was observed to be sitting up and reading a magazine. Id. Plaintiff was pleasant and cooperative with his care. Id. Plaintiff was able to perform all activities of daily life without assistance. Id.

On January 17, 2014, Plaintiff was discharged from the infirmary to general population by Dr. Barrera. Id. at pp. 73-776. Dr. Barrera ordered that Plaintiff have his dressing changed daily and that Plaintiff follow-up with a provider in one week. Id.

On January 21, 2014, Plaintiff was seen by Nurse Practitioner Mahler for a scheduled provider visit. Id. at pp. 78-81. Plaintiff complained of pain at the biopsy site and inquired when he should follow-up with Dr. Stasko. Id. It was noted that Dr. Stasko had not dictated his notes yet, but once this was completed, Dr. Stasko would send the information to WCI. Id. On examination, Plaintiff's sutures were

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 12 -

Case 1:14-cv-00570-JFM   Document 17-1   Filed 07/28/14   Page 13 of 32

intact with no erythema, discharge or bleeding observed. Id. Plaintiff's medications were reviewed and a non-formulary drug request was placed for Tramadol. Id. Nurse Practitioner Mahler placed a referral for Plaintiff to see a provider in one week and placed a non-formulary drug request to renew Plaintiff's Tramadol. Id.

On January 24, 2014, Plaintiff was seen by Dr. Joubert for a scheduled provider visit. Id. at pp. 83- 84. It was determined that Plaintiff's sutures were not ready to be removed yet, and were scheduled to be removed in three days. Id. Before the visit ended, Plaintiff alleged that he was raped twice. Id. Plaintiff stated that he was vulnerable after his surgical procedure and his cellmate took advantage of him. Id. Blood was observed around Plaintiff's anal area and in Plaintiff's underwear. Id. Plaintiff was advised to not shower, brush his teeth or wash. Id. Plaintiff was then scheduled to be transported to the emergency department for further sexual assault evaluation and forensics. Id. Dr. Joubert notified Dr. Ottey, Dr. Ron Paul, the emergency department director, the State Medical Director, the PREA[19] Coordinator, Dental, the Site Assistant Director of Nursing, the Site Director of Nursing, RM, Behavioral Health, and the warden. Id. Plaintiff was taken to the emergency department of Western Maryland Regional Medical Center for post sexual assault evaluation and treatment. Id.

Later, Plaintiff was seen by Dr. Ottey in the infirmary after Plaintiff returned from the emergency department. Id. at pp. 86-88. Plaintiff was diagnosed with a sexual assault and ordered on bed rest with bathroom privileges. Id. Plaintiff was

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[19] PREA stands for Prison Rape Elimination Act.

- 13 -

{066945.DOC}

admitted to the infirmary. Id.

On January 25, 2014, Plaintiff was seen in the infirmary by Nurse Knotts. Id. at p. 89. Plaintiff was requesting his medication. Id. Plaintiff was observed to be anxious due to his recent sexual assault. Id. Plaintiff was later seen by Nurse Ravenscroft in the infirmary. Id. at p. 90. It was noted that while Plaintiff ambulated in a wheelchair for long distances, he was able to ambulate independently. Id. Plaintiff stated that his abdominal and rectal pain was an eight out of ten. Id. Plaintiff showed no signs or symptoms of distress. Id.

Plaintiff was seen later that day by Dr. Ottey on infirmary rounds. Id. at pp. 91-94. Plaintiff reported back, abdominal and rectal pain, but denied rectal bleeding. Id. Dr. Ottey referred Plaintiff to Behavioral Heath for evaluation and treatment. Id.

Plaintiff was later seen by Michelle Schultz, R.N. in the infirmary. Id. at p. 95. It was noted that Plaintiff did not want to be seen by Behavioral Health. Id. Plaintiff was advised that, per protocol, he was required to speak with Behavioral Health before returning to his normal housing unit. Id.

On January 26, 2014, Plaintiff was seen by Dr. Ottey who noted that Plaintiff would be seen by Behavioral Health the next day. Id. at pp. 96-97.

On January 27, 2014, Plaintiff was cleared by the psychologist and discharged from the infirmary and into general population by Dr. Barrera. Id. at p. 98. Later that day, Plaintiff became verbally abusive with correctional staff and Nurse Adams during Plaintiff's scheduled suture removal, calling the correctional

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 14 -

{066945.DOC}

officer and Nurse Adams, "miserable bitches". Id. at p. 101. The Assistant Director of Nursing of the dispensary was emailed to reschedule Plaintiff's suture removal. Id. Later, Plaintiff was seen by Rebecca Leatherman, R.N. who informed Plaintiff that his HIV test was negative. Id. at pp. 102-103. Plaintiff's sutures were later removed by Lisa Shell, R.N. Id. at p. 104.

On February 7, 2014, Plaintiff was seen by Dr. Barrera for a scheduled provider visit. Id. at pp. 106-107. When asked about his sexual assault, Dr. Barrera noted that Plaintiff seemed to not mind and instead complained of back pain. Id. It was noted that during Plaintiff's recent infirmary admission, Plaintiff was ambulating without difficulty and offered no complaints of back pain. Id. It was noted that Plaintiff was now ambulating with the assistance of a chair. Id. Dr. Barrera increased Plaintiff's Baclofen dosage. Id.

On February 11, 2014, Plaintiff was seen by Beverly McLaughlin, R.N.P. for a scheduled provider visit. Id. at pp. 110-14. Plaintiff mostly complained of pain. Id. Plaintiff ambulated with a chair for balance. Id. It was noted that correctional officers previously took away Plaintiff's walker due to safety concerns because Plaintiff assaulted his cellmate with it. Id. Plaintiff reported that he was in constant pain from his surgical procedure and requested an increased dosage of Ultram. Id. Plaintiff stated that the pain is greatest in his lower spine and testicles. Id. **Plaintiff denied the need to be admitted to the infirmary**. Id. Nurse Practitioner McLaughlin placed a non-formulary drug request to increase Plaintiff's Ultram dosage. Id.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 15 -

{066945.DOC}

On February 12, 2014, Nurse Practitioner Mahler noted that Plaintiff's biopsy was positive for neoplasm, and that the tumor was to be stained to assist with a differential diagnosis of the tumor. Id. at pp. 115-16. A consultation was placed with oncology and a provider visit was scheduled for one month to follow the oncology evaluation. Id.

On February 17, 2014, Plaintiff was seen by Nurse Opel due to Plaintiff's complaints of back pain. Id. at p. 117. Plaintiff stated that it was difficult for Plaintiff to sit for extended period of time; however, custody reported that Plaintiff sat in his chair at his door all night with no signs of difficulty. Id. It was noted that Plaintiff recently received an increase in his pain medications and was advised to wait and see how the increased dosage would work. Id.

On February 18, 2014, Plaintiff was seen by Nurse Practitioner McLaughlin for a scheduled provider visit. Id. at pp. 118-120. It was noted that Plaintiff slowly ambulated with a chair as a walker. Id. Plaintiff stated that he could no longer care for himself in his cell, and that he urinates and defecates on himself due to pain and incontinence. Id. Plaintiff was offered diapers, but declined. Id. It was noted that a consult with oncology was recently placed. Id.

On February 26, 2014, Plaintiff was seen by Nurse Practitioner Mahler for a scheduled provider visit related to Plaintiff's complaints of pain. Id. at pp. 121-23. Plaintiff stated that he was assaulted by correctional officers five days prior. Id. Plaintiff also stated that he occasionally urinated and defecated on himself. Id. Plaintiff agreed to use diapers. Id. An x-ray of Plaintiff's spine was ordered and

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

{066945.DOC}

Plaintiff was placed on bottom-bunk status for three months. Id. Physical therapy was also ordered for Plaintiff, which was approved on March 4, 2014. Id.

On March 11, 2014, Plaintiff refused to be seen for his scheduled provider chronic care visit. Id. at p. 124-25. A release of responsibility was signed and witnessed. Id. Plaintiff's chronic care visit was rescheduled for one month. Id.

On March 12, 2014, Plaintiff was seen by Nurse Practitioner McLaughlin for a scheduled provider visit. Id. at pp. 126-29. Plaintiff complained of fatigue, weakness and chronic pain. Id. It was noted that Plaintiff's follow-up visit with oncology was approved. Id.

On March 21, 2014, Plaintiff was seen by Nurse Practitioner Mahler for a scheduled provider visit. Id. at pp. 130-34. Plaintiff complained of fatigue, weakness and chronic pain. Id. Plaintiff ambulated with a chair, but was able to stand up straight on the scale. Id. Plaintiff reported that his pain medication was ineffective. Id. It was further noted that Plaintiff's spinal x-rays were unremarkable. Id. An x-ray of Plaintiff's lumbar spine was ordered and Plaintiff's dosage of Mobic was increased. Id.

On March 26, 2014, Plaintiff was seen by Nurse Practitioner McLaughlin for a scheduled provider visit. Id. at pp.135-39. Plaintiff was again observed to be ambulating with a plastic chair. Id. Plaintiff complained that his pain medication was ineffective. Id. Plaintiff was advised that he needed to give his pain medication increase time to work. Id.

On April 7, 2014, Plaintiff was seen by Nurse Practitioner Mahler for a

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

{066945.DOC}

scheduled provider visit.  Id. at pp. 140-44.  Plaintiff reported lower back pain without bladder or bowel incontinence.  Id.  It was also noted that Plaintiff did not mention testicular pain.  Id.  Plaintiff informed Nurse Practitioner Mahler that he was told by another nurse that he would be provided with a walker.[20]  Id.  Plaintiff's x-rays were unremarkable.  Id.  Nurse Practitioner Mahler placed a non-formulary drug request for Tylenol No. 3.  Id.

On April 9, 2014, Plaintiff was seen by Dr. Barrera for a scheduled provider chronic care visit.  Id. at pp. 145-47.  Plaintiff complained of sharp, non-radiating back pain.  Id.  After examination, Dr. Barrera determined to continue Plaintiff on his current plan of care.  Id.

On April 28, 2014, Plaintiff was scheduled to be seen by Dr. Barrera, but refused per custody.  Id. at p. 153.  A release of responsibility was signed.  Id.

On May 8, 2014, Plaintiff was seen by Maria Lewis, L.P.N. due to reports of Plaintiff lying on the floor.  Id. at p. 154.  Upon arrival, Plaintiff was able to sit up and showed no signs or symptoms of distress.  Id.  Plaintiff stated that he was being denied medical care.  Id.  Plaintiff requested to see a provider for pain management.  Id.  Plaintiff was instructed that he needed to place a sick call for such a request.  Id.

On May 9, 2014, Plaintiff was scheduled to be seen by Nurse Practitioner Mahler for an oncology follow-up visit but refused.  Id. at pp. 156-57.  A release of responsibility was signed and witnessed.  Id.

On May 12, 2013, Plaintiff refused to have his lab work collected.  Id. at p.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

---

[20] Plaintiff was being untruthful here as Plaintiff had been consistently informed that he would not receive a walker due to custody concerns related to Plaintiff attacking a cellmate with a walker in July 2012.

- 18 -

158.   A release of responsibility was completed.   Id.   Later, Plaintiff was seen by Christa Martin, R.N. for a scheduled nurse visit.   Id. at pp. 161-62.   Plaintiff was observed to be ambulating upright and carrying a chair in front of himself with minimal touch-down of the chair to the floor.   Id.   Plaintiff requested an increase of his medication.   Id.   Plaintiff was advised that the pharmacist just reviewed Plaintiff's seventeen medications and that Plaintiff recently had one pain medication increased.   Id.   It was also noted that Plaintiff refused to attend his oncology appointment earlier that month.   Id.   When Plaintiff's request for an ambulance transport to his oncology appointment was refused because Plaintiff was able to sit without difficulty, the appointment was ended and Plaintiff ambulated upright back to his cell carrying his chair.   Id.

On June 11, 2014, Plaintiff was seen by Qamar Zaman, M.D., at the Schwab Family Cancer Center for his scheduled oncology follow-up consultation.   Id. at pp. 205-208.   Dr. Zaman noted that Plaintiff had a long history of sarcoma, which was initially excised in 2005, but which recurred and was gradually monitored and excised by Dr. Stasko on January 16, 2014.   Id.   Upon completion of his evaluation, Dr. Zaman recommended that Plaintiff's sarcoma be re-excised at the margin.   Id. Dr. Zaman further recommended CT scans of Plaintiff's chest, abdomen, and pelvis and an MRI of Plaintiff's thoracic and lumbar spine due to Plaintiff's complaints of pain in those areas.   Id.   It was also noted that Plaintiff requested a fentanyl patch, but Dr. Zaman determined that Plaintiff's medical physician could determine how to treat Plaintiff's pain.   Id.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737 1385
(301) 699-5800

- 19 -

On June 12, 2014, Plaintiff reported a sexual assault from the previous night. Id. at pp. 163-65.  Plaintiff stated that he was punched in the jaw, knocked out and woke up with blood in his rectum.  Id.  Plaintiff stated that he had not showered and that he was wearing the same clothes.  Id.  Plaintiff denied oral sexual abuse.  Id. Plaintiff refused prophylaxis and STI testing.  Id.  A release of responsibility was signed and witnessed.  Id.  Plaintiff was transported to the emergency department for further testing and evaluation.  Id.  Plaintiff was observed later that day by Karen Stratton, R.N. to be sitting in a chair without difficulty.  Id.

Later that day, upon Plaintiff's return from the emergency department, Plaintiff was admitted to the infirmary at WCI.  Id. at pp. 172-73.  Upon arrival, Plaintiff demanded that he be given a chair to assist with his ambulation.  Id. Plaintiff stated he needed the chair so he could scoot.  Id.  Plaintiff claimed an inability to walk due to cancer.  Id.  Per custody, Plaintiff was observed earlier ambulating independently without difficultly.  Id.  Plaintiff was continued on his normal plan of care.  Id.

On June 13, 2014, Plaintiff was discharged from the infirmary to general population.  Id. at pp. 176-77.  It was noted in Plaintiff's discharge summary that no evidence of penetration or sexual assault was observed.  Id.

On June 14, 2014, a PREA incident retrospective was completed.  Id. at pp. 179-180.  It was noted that on examination Plaintiff showed no objective signs of being assaulted and had full range of motion in his jaw with no fractured teeth.  Id.

On June 17, 2014, Plaintiff was seen by Nurse Practitioner Mahler for a

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 20 -

{066945.DOC}

scheduled provider visit to review Dr. Zaman's oncology consult. Id. at p. 181-82. Dr. Zaman recommended re-excision of the margin, CT scans of Plaintiff's chest, abdomen, and pelvis, and MRIs of Plaintiff's cervical and lumbar spine. Id. It was noted that Plaintiff was to be seen by Dr. Stasko for re-evaluation once the tests had been completed. Id. Plaintiff stated that Dr. Zaman ordered a fentanyl patch for Plaintiff; however, Dr. Zaman's note stated, "the [Plaintiff] is requesting fentanyl patch. This can be evaluated by the medical physician." Id. Plaintiff was informed he would not be receiving a fentanyl patch. Id. Plaintiff raised no further concerns. Id.

On June 17, 2014, Nurse Practitioner Mahler placed a consult for Dr. Stasko "for re-excision of the margin due to pathology report showing neoplasm reaches medial tip and extensively involves almost all of the inferior margin." Id. at pp. 183-84. Later that day, Plaintiff was seen by S. Weber, M.S., L.C.P.C., N.C.C, for a behavioral health visit. Id. at pp. 187-89. Mr. Weber stated that Plaintiff was manipulative, showed poor judgment, and presented with significant Axis II characteristics. Id.

On June 18, 2014, Plaintiff was seen by Nurse Practitioner McLaughlin for a scheduled provider visit. Id. at pp. 190-94. Plaintiff complained of uncontrolled pain. Id. Plaintiff requested a fentanyl patch, but was informed that a fentanyl patch was not an option at WCI. Id. Nurse Practitioner McLaughlin offered to increase Plaintiff's Gabapentin and Plaintiff agreed. Id.

On June 20, 2014, Plaintiff was transferred to North Branch Correctional

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 21 -

Institution ("NBCI"). Id. at pp. 197-204.

Plaintiff continues to be evaluated by prison medical staff as a chronic care inmate. Exhibit 2. Plaintiff may also seek more immediate medical assistance through the prison sick call system. Id.

## III.    **LEGAL STANDARDS**

In review of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), plaintiff's well pleaded material facts may be taken as admitted, but not plaintiff's legal conclusions. Kugler v. Helfant, 421 U.S. 117, (1975). Dismissal of a complaint is appropriate when it appears to a reasonable certainty that the plaintiff is not entitled to relief under any statement of facts which could be proven in support of his claim. Wilson v. Civil Town of Clayton, 839 F.2d 375 (7th Cir. 1988). Therefore, when it is clear, as in the above captioned Complaint, that a plaintiff can prove no set of facts which would entitle him to relief, the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Since there are no facts in this matter which would indicate a claim for violation of Plaintiff's civil rights under 42 U.S.C. § 1983, Plaintiff's Complaint and amendments thereto must be dismissed for failing to state a claim upon which relief can be granted.

Alternatively, Defendants are entitled to judgment in their favor as a matter of law. Federal Rule of Civil Procedure 56 provides that summary judgment shall be entered in favor of the moving party when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party has the burden to

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 22 -

show that there is no dispute as to material facts, however, it need not negate its opponent's case, but need only to disclose the absence of evidence to support that case.  Weinberger v. Bristol-Myers Co., 652 F. Supp. 187 189 (D. Md. 1986) (citations omitted).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Johnson v. Aldana, 2009 U.S. Dist. Lexis 74131 at 13 (No. JFM-08-2111, D. Md., Aug. 19, 2009). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. Id. at 5; (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976).  Deliberate indifference to a serious medical need is defined as "treatment [that is] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Hodgson v. Corizon Med. Staff, 2012 U.S. Dist. Lexis 103484 at 19 (No. ELH-11-3515, D. Md. July 24, 2012); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

A showing of mere negligence is not enough to meet the standard. Hodgson, supra; see also Farmer v. Brennan, 511 U.S. 825, 835 (1994); Grayson v. Feed, 195 F.3d 692, 695 (4th Cir. 1999).  Indeed, "mere error of judgment or 'inadvertent failure to provide medical care, while perhaps sufficient to support an action for malpractice, will not constitute a constitutional deprivation redressable under [42 U.S.C. § 1983]." Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1979) (quoting Estelle, 429 U.S. at 104). In addition, inmates do not have a constitutional

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 23 -

{066945.DOC}

right to treatment of their choice, <u>Dean v. Coughlin</u>, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury and will not make out a cause of action under § 1983. <u>Estelle</u>, 429 U.S. at 105-106; <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir. 1985); <u>Taylor v. Barnett</u>, 105 F.Supp.2d 483,487 (E.D. Va. 2000); <u>U.S. v. Clawson</u>, 650 F.3d 530, 538 (4th Cir. 2011).

Finally, it is well settled that in awarding injunctive relief, a court must determine that the party seeking such relief "has demonstrated actual, imminent, irreparable harm, as well as likelihood of success." <u>See</u>, <u>e.g.</u>, <u>Strickland v. Wang</u>, 2011 U.S. Dist. LEXIS 66041 at *2 (W. D. Va. 2011) (citations omitted). The plaintiff bears the burden of making a clear showing that there is a strong likelihood of irreparable harm if the relief is not granted. <u>Id</u>. at 812.

## IV.   <u>ARGUMENT</u>

### A.   <u>PLAINTIFF FAILS TO STATE ANY CAUSE OF ACTION UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. SECTION 1983</u>

As a threshold matter, Wexford is a corporate entity and not a "person" for purposes of 42 U.S.C. § 1983. Consequently, no claim will lie against Wexford for alleged constitutional violations under Section 1983 and it should be dismissed as a Defendant. <u>See</u> <u>e.g.</u> <u>McNeill v. Wolfe,</u> 2011 U.S. Dist. Lexis 100782 at 7 (No WDQ-10-3116, D. Md. September 7, 2011) ("A private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of <i>respondeat superior</i>." (citations omitted)).

Furthermore, to state a cause of action under §1983, a plaintiff must allege

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 24 -

conduct indicating "deliberate indifference" to a "serious illness or injury." <u>Estelle v. Gamble</u>, 429 U.S. 97, (1976).  In the context of an alleged denial of medical care, the health care provider's alleged conduct and treatment must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Miltier v. Beorn</u>, 896 F.2d 848,851 (4th Cir. 1990) (citation omitted.)

The plaintiff must also allege specific facts showing an intentional denial of needed medical care or a failure to provide diagnosis or treatment readily available. <u>Estelle</u>, 429 U.S. 97 (1976).  Accordingly, a plaintiff must supply "hard evidence" of an unnecessary and wanton infliction of pain which has resulted in serious medical or emotional deterioration. <u>Lopez v. Robinson</u>, 914 F.2d 486 (4th Cir. 1990).  The Supreme Court in <u>Estelle</u> distinguished between an inadvertent failure to provide medical care and a deliberate indifference to serious medical needs.  Only the latter can form the basis for an action under § 1983. <u>Daniels v. Gilbreath</u>, 668 F.2d 477, 482 (10th Cir. 1982).  A plaintiff's bare and/or conclusory allegations that the defendant acted with deliberate indifference to Plaintiff's serious medical needs is insufficient to state a cause of action under § 1983. <u>Estelle</u>, 429 U.S. 97 (1976).

Additionally, a plaintiff must adequately plead that the health care provider acted with a sufficient culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294 (1991).  Thus, the plaintiff must allege that the health care provider exhibited a wanton and unyielding disregard to an objective intolerable risk of harm to Plaintiff. <u>Farmer v. Brennan</u>, 511 U.S.825 (1994).  Said conduct on the part of the health care provider

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 25 -

{066945.DOC}

must rise to the level of subjective recklessness, in a criminal sense, to a substantial risk of danger of which they are specifically aware. Id.

This intent requirement is implicit in the Eighth Amendment's proscription of cruel and unusual punishment. Acts which are inadvertent, accidental or made in good faith do not constitute punishment and do not violate the Eighth Amendment. Brewer v. Blackwell, 836 F.Supp. 631 (S.D. Iowa 1993). Accordingly, Plaintiff must allege acts or omissions sufficiently harmful to evidence deliberate indifference. Estelle, 429 U.S. at 105-106.

In application of the foregoing to the case at bar, Plaintiff has failed to set forth sufficient facts to establish that Defendants knowingly failed to provide constitutionally adequate medical care to a serious medical need, much less that this Defendants acted with deliberate indifference. See ECF No. 1.

Rather, Plaintiff alleges that Dr. Barrera did not follow his own recommendation of admitting Plaintiff into the infirmary and that he is not receiving adequate medical care for his cancer. ECF No. 1. However, it is well settled that claims which assert merely a disagreement over treatment between an inmate and his health care providers do not state a claim under §1983. See Estelle, 429 U.S. 91. Indeed, as set forth above, an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Ventry v. Gusman, 2012 U.S. Dist. LEXIS 56364, 13-14, 2012 WL 1405862 (E.D. La. Mar. 29, 2012) (Plaintiff's claim that he disliked  the asthma pump provided and  that it was not the type he was accustomed to using constituted a

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 26 -

{066945.DOC}

disagreement with his medical providers and not deliberate indifference to medical needs); Taylor v. Norris, 36 Fed. Appx. 228, 229 (8th Cir. 2002) (deliberate indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-25 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephens, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmate's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to proper medical treatment does not give rise to Eighth

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 27 -

Amendment violation).

Given the legal standard necessary to state a claim under §1983, it is patently obvious that Plaintiff's Complaint falls far short of the required standard to withstand this Motion to Dismiss.   Therefore, Plaintiff's Complaint must be dismissed as failing to state a claim upon which relief can be granted.

## B.   BASED ON THE UNDISPUTED MATERIAL FACTS DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

Summary Judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Based on the undisputed material facts as presented in the pleadings, the select medical records of Plaintiff attached hereto as Exhibit 1 and the Affidavit of Robustiano Barrera, M.D. attached hereto as Exhibit 2, Defendants are entitled to judgment as a matter of law.

From a review of the facts, other than Plaintiff's bald and unsubstantiated conclusions, Plaintiff has presented no admissible evidence that Defendants acted to deliberately deny or deprive Plaintiff of necessary medical care for the conditions in question.  See Exhibits 1, 2.  Rather, the record reflects that Defendants acted in good faith to evaluate and treat all of Plaintiff's medical needs, especially in relation to his back tumor and related pain.  Id.

Specifically, since July 2013, Plaintiff was seen by nursing staff at least twenty-two times, a nurse practitioner at least fifteen times, a medical doctor at least seventeen times, and was sent to a tertiary facility for evaluation, treatment and/or

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 28 -

{066945.DOC}

surgery six times. <u>See generally</u> Exhibit 1. Moreover, during this same time period, it was noted that Plaintiff was noncompliant with his medication regime and outright refused to be treated on at least six occasions and, despite his allegations, refused to be admitted to the infirmary. <u>Id</u>. Furthermore, despite Plaintiff's allegations, Plaintiff received CT scans of his back, chest, and/or pelvis on two occasions, an MRI of his back on one occasion, and x-rays of his back and spine on at least three occasions. <u>Id</u>. Finally, Plaintiff's medical record reveal that Plaintiff was regularly hostile toward medical personnel and regularly exhibited manipulative and deceitful behaviors that included lying, verbal abuse, and threats toward medical personnel. <u>Id</u>.

Therefore, based on these undisputed material facts, it is clear that Plaintiff's claims do not concern the denial of medical care, much less deliberately indifferent care, but rather amount to, at best, a disagreement over what Plaintiff believes to be the proper course of medical treatment for his tumor and chronic pain. Accordingly, based on the factual record as developed, there is absolutely no evidence that Wexford intentionally or deliberately acted to deprive Plaintiff of medically necessary treatment. <u>See</u> Exhibits 1, 2.

The law is clear that where the evidence establishes mere disagreement with considered medical judgment, the court will not second guess the doctors. <u>Bretz v. Superintendent Corr. Field Unit No. 9</u>, 354 F. Supp. 7 (W. D. Va. 1973) (a prisoner cannot be the ultimate judge of what medical treatment is necessary or proper in his case); <u>Mathis v. Pratt</u>, 375 F.Supp. 301, 304-05 (N.D. Ill. 1974) (a plaintiff's right is

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

{066945.DOC}

to medical care – not to the type or scope of medical care which he personally desires"); see also Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968); Stokes v. Hurdle, 393 F. Supp. 757, 762-763 (1975). Accordingly, the mere failure to treat all medical problems to a prisoner's satisfaction… is insufficient to support a claim under § 1983. Peterson v. Davis, 551 F. Supp. 137, 146 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Circ. 1984), Johnson v. Joubert, 2012 U.S. Dist. LEXIS 87531 at 12 (D. Md. June 25, 2012); See Goff v. Bechtold, 632 F. Supp. 697 (S.D.W. Va. 1986) (a prisoner cannot maintain a cause of action for denial of medical treatment where he merely harbors a different opinion than his custodians as to the correctness of his course of treatment), citing, Randall v. Wyrick, 642 F.2d 304 (8th. Cir. 1981); See also, Hathaway v. Coughlin, 37 F.3d at 70 (Jacobs, C. J., dissenting) ("'We do not sit as a medical board of review. Where the dispute concerns not the absence of help, but the choice of a certain course of treatment, or evidences mere disagreement with considered medical judgment, we will not second guess the doctors."').

In light of the foregoing, Defendants are entitled to judgment as a matter of law as based on the undisputed material facts there is no evidence from which a jury could reasonably find for Plaintiff. Anderson, 477 U.S. 242 (1986).

## C.    PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF

In his Complaint, Plaintiff seeks as injunctive relief that he be provided with proper medical treatment and that Plaintiff be transferred to a prison located outside of Cumberland Maryland. See ECF No. 1.

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 30 -

{066945.DOC}

Generally four factors enter into a court's decision as to whether to grant injunctive relief: the likelihood of irreparable harm to the Plaintiff if the preliminary injunction is denied; the likelihood of harm to the defendant if the requested relief is granted; the likelihood that the plaintiff will succeed on the merits; and the public interest. Direx Israel v. Breakthrough Medical Corp., 952 F.2d 802 (4th Cir. 1991). Emphasis is placed on the likelihood of irreparable harm to the plaintiff and the harm to the defendant. The plaintiff bears the burden of making a clear showing that there is a strong likelihood of irreparable harm if the relief is not granted, specifically, that the harm is "neither remote nor speculative, but actual and imminent." Id. at 812; see also Manning v. Johnson, 2012 U.S. Dist. LEXIS 160588 (D. Md. 2012).

In the instant action, the medical record demonstrates that Plaintiff has received appropriate diagnostic testing and medical care for his tumor and chronic pain. See Exhibits 1, 2. Therefore, based on the factual record as developed through the Plaintiff's medical records and the sworn affidavit of a medical doctor, Plaintiff cannot likely prevail on the merits of his case in maintaining a § 1983 cause of action against Defendants. Accordingly, Plaintiff is not entitled to the injunctive relief requested.

## V.    CONCLUSION

Plaintiff's Complaint fails to state a claim upon which relief can be granted and must be dismissed. Alternatively, the undisputed material facts establish that Plaintiff has received constitutionally adequate medical care. Thus, there is no

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

{066945.DOC}

evidence that Defendant willfully and knowingly disregarded Plaintiff's substantial medical needs to sustain a claim for deliberate indifference.  Accordingly, Plaintiff is not entitled to injunctive relief as a matter of law.

Respectfully submitted,

**MEYERS, RODBELL & ROSENBAUM, P.A.**

By: _Joseph B Chazen_
   Joseph B. Chazen
   Trial Bar No. 03154

By: _Gina M Smith_
   Gina M. Smith
   Federal Bar No. 22425
   6801 Kenilworth Avenue, Suite 400
   Riverdale, Maryland 20737
   (301) 699-5800

LAW OFFICES
MEYERS, RODBELL
& ROSENBAUM, P.A.
SUITE 400 BERKSHIRE BUILDING
6801 KENILWORTH AVENUE
RIVERDALE PARK, MARYLAND 20737-1385
(301) 699-5800

- 32 -

{066945.DOC}